Filed 4/30/26  P. v. Rodriguez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E084913 |
| v. | (Super.Ct.No. RIF2302242) |
| SAMUEL ANGEL RODRIGUEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Stephen J. Gallon, Judge. Affirmed in part, vacated in part, and remanded with directions.

Stephanie L. Gunther, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel Rogers, Alana Cohen Butler and Amanda Lloyd, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Samuel Angel Rodriguez appeals from the judgment entered after a jury convicted him on two felony counts, including one count of second degree robbery with personal use of a deadly or dangerous weapon, namely, a knife. (Pen. Code, §§ 211, 12022, subd. (b)(1); unlabeled statutory citations refer to this code.) Rodriguez argues that the court erred by giving instructions that allowed the jury to consider a knife to be an inherently deadly or dangerous weapon. He also argues that there was insufficient evidence to support the true finding on the weapon enhancement allegation. The People concede that the instruction should not have been given, but they argue that the error was harmless and that the record contains substantial evidence supporting the true finding.

We agree with the parties that the instruction should not have been given, and we conclude that the error was prejudicial under the applicable standard. But we agree with the People that the evidence supporting the true finding on the enhancement allegation is sufficient. We accordingly vacate the finding, and we remand for further proceedings. We otherwise affirm the judgment.

BACKGROUND

In August 2024, the People filed an amended information charging Rodriguez with two counts of robbery. (§ 211.)[1] The People alleged that Rodriguez personally used a deadly or dangerous weapon, namely, a knife, during the commission of the robbery charged in count 2. (§§ 1192.7, subd. (c)(23), 12022, subd. (b)(1).) The People also alleged that Rodriguez had two prior serious felony convictions and one prior strike

---

[1] The issues in this appeal relate solely to the second robbery count.

conviction. (§§ 667, subds. (a), (c), (e)(1), 1170.12, subd. (c)(1).) Before trial, the court granted the People's motion to strike one of the prior serious felony conviction allegations.

At trial, the People introduced evidence that in December 2023, a loss prevention employee at Home Depot called law enforcement after Rodriguez pulled a knife on him while stealing merchandise from the store. The employee saw Rodriguez walk through the store "grabb[ing] the merchandise," wait in the checkout line, but then skip the register and walk out of the store with the merchandise in his arms. The employee followed Rodriguez toward the exit and approached him outside.

Rodriguez gave the merchandise to the employee, but he asked the employee to "let [him] keep one" item. When the employee said, "I can't let you do that," Rodriguez "smacked the merchandise out of [the employee's] hand." When the merchandise fell, the employee tried to put himself between it and Rodriguez. The employee told him to leave, and Rodriguez pulled a seven-inch knife from his waistband and started coming toward the employee. The employee felt threatened and backed up approximately 20 feet into the store. Rodriguez collected the merchandise and left.

A detective spoke to the employee and obtained surveillance videos of the incident. The detective testified at trial that the surveillance videos showed Rodriguez walking out of the store with merchandise and the employee "approaching him and confronting him at the threshold of the store," after which Rodriguez "pull[ed] out a black knife from his waistband and held it to his side." The detective testified that "[a]t

3

that point [the employee] backed up; [Rodriguez] picked up the merchandise from the ground and left." The surveillance videos were played for the jury.

The court instructed the jury that "[a] deadly or dangerous weapon is any object, instrument, or weapon that is inherently deadly, dangerous, or one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury. [¶] An object is inherently deadly if it is deadly or dangerous in the ordinary use for which it was designed. [¶] In deciding whether an object is a deadly weapon, consider all of the surrounding circumstances, including when and where the object was possessed, where the person who possessed the object was going, whether the object was changed from its standard form, and any other evidence that indicates whether the object would be used for a dangerous, rather than a harmless, purpose. [¶] Great bodily injury means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm. [¶] Someone personally used a deadly or dangerous weapon if he or she intentionally; [¶] 1. Displays the weapon in a menacing manner; [¶] [or] [¶] 2. Hits someone with the weapon."

During closing argument, the prosecutor addressed the weapon enhancement as follows: "Count 2 also has the personal use allegation of a weapon. We talked about this in opening statements, and it's the knife. It is Penal Code Section 12022(b)(1), if for some reason you want to remember that, but the instruction you have is [CALCRIM No.] 3145.

4

"Essentially, what it boils down to is personal use is accomplished one or two ways. Somebody displays the weapon in a menacing manner or hits somebody with that weapon. We know that Mr. Rodriguez didn't hit [the employee] with the knife because we've got the video, and we heard what [the employee] testified to, but he did display it in a menacing manner. We can see it on the video, and [the employee] told us he was scared and he told us why he was scared.

"A deadly weapon is something that is inherently deadly by its nature; a gun, a knife; and deadly or dangerous means deadly or dangerous in the ordinary use for which that device is designed (displaying). Let me say that again because I'm not trying to put anybody to sleep.

"Something is deadly or dangerous by way of its inherent use for its typical purpose, a knife. What's the inherent use of a knife? Why was the knife designed to cut, to stab, similar to a gun?"

The jury found Rodriguez guilty of the robbery charged in count 2, and it also returned a true finding on the weapon enhancement allegation. The verdict form for the weapon enhancement asked the jury to determine only whether the defendant used a knife. It stated, "[w]e, the jury in the above-entitled action, find _____, [*insert TRUE or NOT TRUE in blank*] the allegation that the Defendant, [Rodriguez], during the commission of the violation of Penal Code section 211, used a knife." The jury acquitted Rodriguez of the robbery charged in count 1 but convicted him of the lesser included offense of attempted robbery.

The court found the prior conviction allegations true and sentenced Rodriguez to eight years, including one year for the weapon enhancement.

DISCUSSION

I.  *Instructional error*

Rodriguez argues that the court erred by giving instructions that permitted the jury to consider a knife to be an inherently dangerous weapon, because as a matter of law a knife is not an inherently dangerous weapon.  The People agree, but they argue that because the court defined "inherently dangerous," the error was "'of a kind the jury is fully equipped to detect,'" so "'reversal is not required'" as long as "'a valid ground for the verdict remains'" and there is no "'affirmative indication in the record that the verdict actually did rest on the inadequate ground.'"  We conclude that the error was prejudicial under the applicable standard, so the true finding on the enhancement allegation must be vacated.

"Because a knife can be, and usually is, used for innocent purposes, it is not among the few objects that are inherently deadly weapons.  'While a knife is not an inherently dangerous or deadly instrument as a matter of law, it may assume such characteristics, depending upon the manner in which it was used . . . .'" (*People v. Aledamat* (2019) 8 Cal.5th 1, 6 (*Aledamat*).)  A trial court therefore errs by instructing a "jury with two theories by which it could find [a knife] a deadly weapon:  (1) inherently or (2) as used.  The first theory (inherently) is incorrect, but the second theory (as used) is correct." (*Id*. at p. 7.)

6

The Supreme Court has "considered the consequences when a court instructs on two theories of guilt, one correct and the other incorrect." (*Aledamat*, *supra*, 8 Cal.5th at p. 7.) The Supreme Court "call[ed] this kind of error 'alternative-theory error'" and "distinguished between two categories of incorrect theories." (*Id*. at p. 7 & fn. 3.) A theory is "'*factually* inadequate'" if "the theory is incorrect only because the evidence does not support it." (*Id*. at p. 7.) If "'the inadequacy of proof is purely factual, of a kind the jury is fully equipped to detect, reversal is not required whenever a valid ground for the verdict remains, absent an affirmative indication in the record that the verdict actually did rest on the inadequate ground.'" (*Ibid*.) Thus, a reviewing court "should affirm the judgment unless a review of the entire record affirmatively demonstrates a reasonable probability that the jury in fact found the defendant guilty solely on the unsupported theory." (*People v. Guiton* (1993) 4 Cal.4th 1116, 1130 (*Guiton*).)

In contrast, a theory is "'"*legally* inadequate"'" if it "is incorrect because it is contrary to law." (*Aledamat*, *supra*, 8 Cal.5th at p. 7.) Because "the jury is *not* equipped to detect" such an error, "a higher standard must be met for the error to be found harmless." (*Ibid*.) Consequently, if a jury is instructed on a legally inadequate theory, then the error is reversible unless it is harmless beyond a reasonable doubt. (*Id*. at p. 13.)

"'These different tests reflect the view that jurors are "well equipped" to sort *factually* valid from invalid theories, but ill equipped to sort *legally* valid from invalid theories.'" (*Aledamat*, *supra*, 8 Cal.5th at p. 7.) "In determining whether there was prejudice, the entire record should be examined, including the facts and the instructions,

the arguments of counsel, any communications from the jury during deliberations, and the entire verdict." (*Guiton*, *supra*, 4 Cal.4th at p. 1130.)

Again, the court instructed the jury with CALCRIM No. 3145 and included the following bracketed portions of the instruction: "A deadly or dangerous weapon is any object, instrument, or weapon that is inherently deadly, dangerous, or one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury. [¶] An object is inherently deadly if it is deadly or dangerous in the ordinary use for which it was designed."

We agree with the parties that the court erred by giving instructions that permitted the jury to find that a knife is an inherently deadly or dangerous weapon. And we agree with the People that the theory was factually inadequate, because the instructions defined "inherently deadly" and thus equipped the jury to detect the error.[2] (See *Aledamat*, *supra*, 8 Cal.5th at p. 8.)

We agree with Rodriguez, however, that the error was prejudicial. During closing argument, the prosecutor contended that a knife is an inherently dangerous weapon: "A deadly weapon is something that is inherently deadly by its nature; a gun, a knife; and deadly or dangerous means deadly or dangerous in the ordinary use for which that device is designed (displaying). Let me say that again because I'm not trying to put anybody to

---

[2]     Rodriguez argues in his opening brief that the instructions presented a legally inadequate theory, but his reply brief does not attempt to rebut the People's argument that because the instructions defined "inherently deadly," the theory is factually inadequate under *Aledamat*.

sleep. [¶] Something is deadly or dangerous by way of its inherent use for its typical purpose, a knife. What's the inherent use of a knife? Why was the knife designed to cut, to stab, similar to a gun?" (See *Guiton*, *supra*, 4 Cal.4th at p. 1130 ["the arguments of counsel" must be considered in determining whether alternative-theory error was prejudicial].) The prosecutor thus argued that a knife is inherently deadly under the definition that the jury was given.

In addition, the verdict form did not ask the jury to find whether Rodriguez used a deadly or dangerous weapon. It did not refer to the enhancement allegation or even identify the applicable code section, which might have allowed the jury to correlate the verdict form with the relevant written instruction. Instead, the verdict form asked the jury to determine whether Rodriguez used a knife, without any requirement that the knife be found deadly or dangerous on any theory. (See *Guiton*, *supra*, 4 Cal.4th at p. 1130 ["the entire verdict" must be considered in determining whether alternative-theory error was prejudicial].)

Because the prosecutor argued the erroneous theory to the jury and the verdict form neither referred to the instructions on the enhancement nor required the jury to find the knife deadly or dangerous at all, we conclude that the "record affirmatively demonstrates a reasonable probability that the jury in fact found" the enhancement allegation true "solely on the unsupported theory." (*Guiton*, *supra*, 4 Cal.4th at p. 1130.) The error was therefore prejudicial, so the true finding on the enhancement allegation must be vacated.

## II.    *Sufficiency of the evidence*

Rodriguez argues that there was insufficient evidence to support the weapon enhancement.  In particular, he claims that there was no evidence about "what type of knife [Rodriguez] possessed."  We disagree.

"A person who personally uses a deadly or dangerous weapon in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for one year, unless use of a deadly or dangerous weapon is an element of that offense."  (§ 12022, subd. (b)(1).)  To find the enhancement allegation true, "a fact finder must conclude that, during the crime or attempted crime, the defendant '*intentionally* displayed in a menacing manner or struck someone with an instrument capable of inflicting great bodily injury or death.'"  (*People v. Johnson* (1995) 38 Cal.App.4th 1315, 1320.)

We review a true finding on a deadly weapon enhancement allegation for sufficiency of the evidence.  (*People v. Alvarez* (1996) 14 Cal.4th 155, 224-225.)  "The question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the elements of the underlying enhancement beyond a reasonable doubt."  (*Id*. at p. 225.)

The video surveillance footage showed that during the confrontation with the Home Depot employee, Rodriguez pulled a seven-inch knife from his waistband to intimidate the employee and cause him to retreat.  Rodriguez held the knife at his side and moved toward the employee to create space between the employee and the

merchandise. The employee backed up approximately 20 feet, allowing Rodriguez to grab the stolen items and leave. The employee testified that he "felt threatened," and he thought that Rodriguez was going to come after him with the knife.

The jury could reasonably conclude from the foregoing evidence that Rodriguez used the knife in a manner that was capable of causing and likely to cause death or great bodily injury. The record therefore contains sufficient evidence to support a true finding on the enhancement allegation.

DISPOSITION

The true finding on the weapon enhancement allegation (§ 12022, subd. (b)(1)) attached to count 2 is vacated. The matter is remanded to the superior court with directions to give the People the opportunity to retry the enhancement. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:

MILLER
Acting P. J.

LEE
J.

11